UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
ARISTIDES "POPS" PITSILADI, NICHOLAS
PITSILADI, Individually and as Members          :
of WEST 23RD STREET REALTY LLC.,
WEST 36TH STREET REALTY LLC AND            :    **ORAL ARGUMENT REQUESTED**
MACPIN REALTY LLC, WEST 23RD STREET
REALTY LLC, WEST 36TH STREET REALTY LLC    :    **07 Civ. 6605 (JGK)**
AND MACPIN REALTY LLC,
                                                :    **NOTICE OF MOTION TO**
                     Plaintiffs,                     **DISMISS COUNTERCLAIM**
                                                :

          -against-                             :

                                                :
WILLIAM GUERRERO, CITY PROPERTY
MANAGEMENT AND DEVELOPMENT INC.,                :

                     Defendants.                :
------------------------------------------X

      **PLEASE TAKE NOTICE** that upon the Affidavit of Jack S.

Dweck, sworn to the 17th day of October 2007 and the Summons,

Complaint, Answer and Counterclaim heretofore served and filed

herein, the Plaintiffs will move before the Honorable John G.

Koeltl, United States District Judge, at the United States

District Court, 500 Pearl Street, New York, New York, on the

date and time to be set by the Court, for an order pursuant to

FRCP 12(b)(6) to strike the counterclaim asserted by the

Defendants upon the grounds that the same fails to state a claim

upon which relief can be granted, together with such other and

further relief as to this Court may seem just and proper.

**PLEASE TAKE FURTHER NOTICE** that answering papers shall be served and filed not less than seven days prior to the return date of this Motion.

Dated:    New York, New York
          October 17, 2007

                         The Dweck Law Firm, LLP
                         Attorneys for Plaintiffs

          By: _____
                         Jack S. Dweck (0659)
                    75 Rockefeller Plaza
                    New York, New York  10019
                    212-687-8200

To:  Michael A. Haskel, Esq.
     Attorneys for Defendants
     167 Willis Avenue
     Mineola, New York  11501
     516-294-0250

S:\Secretary 2\Client Docs\West 23rd-2nd action - Misapprop\notice of motion to dismiss counterclaim 10-15-2007.doc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
ARISTIDES "POPS" PITSILADI, NICHOLAS
PITSILADI, Individually and as Members    :
of WEST 23RD STREET REALTY LLC.,
WEST 36TH STREET REALTY LLC AND    :
MACPIN REALTY LLC, WEST 23RD STREET        07 Civ. 6605 (JGK)
REALTY LLC, WEST 36TH STREET REALTY LLC    :
AND MACPIN REALTY LLC,                          **AFFIDAVIT**

                                          :

                    Plaintiffs,

                                          :

          -against-

                                          :

WILLIAM GUERRERO, CITY PROPERTY
MANAGEMENT AND DEVELOPMENT INC.,          :

                    Defendants.           :
-------------------------------------------X
   CITY OF NEW YORK    )
                       ) ss:
   COUNTY OF NEW YORK  )

        **Jack S. Dweck**, being duly sworn, deposes and says:

        1.    I am a member of The Dweck Law Firm and submit this

Affidavit in support of the motion brought on behalf of the

Plaintiffs to strike the counterclaim asserted by the Defendants

upon the grounds that the same fails to state a claim upon which

relief can be granted.

        2.    The Plaintiffs have brought this Action against the

Defendants to recover monies that were misappropriated from

rents collected by the Defendants when they acted as managing

agents of certain commercial properties owned by the three

limited liability Plaintiffs in New York City. The Defendants

have been charged with Breach of Contract (first cause of

action), Breach of Fiduciary Obligations (second cause of
action), Conversion (third cause of action), Breach of the
Covenant of Good Faith (fourth cause of action), for an
Accounting (fifth cause of action) and for Trade Libel and
Defamation (sixth cause of action). A copy of the Summons and
Complaint is annexed hereto as Exhibit 1.

   3. In their answer, annexed as Exhibit 2, the Defendants
have denied generally the allegations of the Complaint, except
that they have admitted having made political contributions from
the rent collections from the Plaintiffs' properties, but assert
that these political contributions were made with the
authorization and permission of the Plaintiffs. In addition, the
Defendants have attempted to assert a counterclaim for
defamation against the Plaintiffs by having alleged that Dave
Nezar, their attorney in South Africa, allegedly made a
statement that ..."Guerrero had been fired for misappropriating
funds." Regardless of whether such a statement was ever made, it
is respectfully submitted that such a statement made by a third
party is not, and could not ever be, considered as a defamatory
statement by the Plaintiffs or constitute defamation *per se*.
Moreover, the Defendants have failed to plead any special
damages, and in all events, even if the statement were
actionable, it could only be the subject of a lawsuit against

Dave Nezar in South Africa, where he resides and where the alleged utterance was supposedly made.

4.    The Defendants could never prove in a court of law that the statement was attributable to the Plaintiffs because, by their own allegations as set forth in their counterclaim, the Defendants have alleged that the Plaintiffs "instructed or authorized Dave Nezar to respond to press inquiries about Defendants' lawsuit against Plaintiffs by telling them that Defendants had been terminated due to Guerrero's misappropriation of funds." (paragraph 59 of Defendants' Answer and Counterclaim). Such a statement would be subject to a bar due to the attorney-client privilege. Thus, even if such a communication was had between attorney Dave Nezar and the individual Plaintiffs, it could never be disclosed. The Counterclaim, therefore, is insufficient as a matter of law based upon the face of the allegations as they are set forth in Defendants' answer. The Counterclaim should therefore be dismissed.

5.    No previous application for this relief has been made.

Sworn to before me this
17th day of October 2007

_____
Notary Public

Jack S. Dweck

H. P. SEAN DWECK
Notary Public, State of New York
No. 02DW5057936
Qualified in Westchester County
Commission Expires April 1, 1998

**EXHIBIT 1**

# United States District Court

SOUTHERN _____ DISTRICT OF _____ NEW YORK

ARISTIDES "POPS" PITSILADI, NICHOLAS PITSILADI,
Individually and as Members of WEST 23rd STREET
REALTY LLC., WEST 36th STREET REALTY LLC AND
MACPIN REALTY LLC, WEST 23rd STREET REALTY LLC,
WEST 36th STREET REALTY LLC AND MACPIN REALTY LLC,
                              Plaintiffs,

**SUMMONS IN A CIVIL ACTION**

V.

WILLIAM GUERRERO, CITY PROPERTY MANAGEMENT
AND DEVELOPMENT INC.,

                              Defendants.

CASE NUMBER: **'07 CIV 6605**

**JUDGE KOELTL**

TO: (Name and Address of Defendant)

William Guerrero
City Property Management And
    Development Inc.
100 West 23rd Street
New York, NY 10011

City Property Management And
    Development Inc.
100 West 23rd Street
New York, NY 10011

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)
THE DWECK LAW FIRM, LLP
75 Rockefeller Plaza, 16th Floor
New York, NY 10016
(212) 687-8200

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

J. MICHAEL McMAHON

CLERK

BY DEPUTY CLERK

DATE

JUL 2 3 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ARISTIDES "POPS" PITSILADI, NICHOLAS
PITSILADI, Individually and as Members          Civil Action No.:
of WEST 23RD STREET REALTY LLC.,
WEST 36TH STREET  REALTY LLC AND
MACPIN REALTY LLC, WEST 23RD STREET
REALTY LLC, WEST 36TH STREET REALTY LLC
AND MACPIN REALTY LLC,

                        Plaintiffs,              **COMPLAINT**

        - against -

WILLIAM GUERRERO, CITY PROPERTY
MANAGEMENT AND DEVELOPMENT INC.,

                        Defendants.
----------------------------------------X

        The Plaintiffs, Aristides "Pops" Pitsiladi, and

Nicholas Pitsiladi, (hereinafter "Plaintiffs") by their attorneys,

The Dweck Law Firm, LLP, complain of the Defendants William

Guerrero and City Property Management and Development Corp.

(hereinafter "Defendants") and respectfully allege to this Court

as follows:

## I. INTRODUCTION AND BACKGROUND

        1.  This action is brought to recover damages from the

Defendants for their mismanagement of the properties owned by the

Plaintiffs where the Defendants, as licensed real estate brokers,

collected the rents from the properties owned by the Plaintiffs,

and wrongfully and without color of authority or law, made

political contributions from rent collections, failed to bill

tenants of Plaintiffs' buildings for taxes, escalations, and

water and sewer charges, overcharged the Plaintiffs for
management fees and diverted and converted monies which properly
belonged to the Plaintiffs.  Due to the wilful and intentional
conduct of the Defendants, Plaintiffs seek both compensatory and
punitive damages.  The Plaintiffs seek damages for the malicious
publication and dissemination of defamatory accusations by the
Defendant William Guerrero against the Plaintiffs, of having
engaged in illegal conduct by money laundering, promoting a Ponzi
scheme in the United States, by having evaded taxes in the United
States and in South Africa where they reside, and that the
Plaintiffs were under criminal investigation by the South African
governmental authorities.

## II.  THE PARTIES

2.  At all times hereinafter mentioned, the Plaintiffs
are citizens of the Republic of South Africa.

3.  At all times hereinafter mentioned, and from 1992
to and including 2004, the Plaintiff WEST 23rd STREET REALTY, LLC
(West 23rd Street or collectively with the Co-Plaintiffs as
"Plaintiffs") is a New York limited liability company and was and
still is the sole owner of the premises located at and known as
and by the street number 100 West 23rd Street, County, City and
State of New York.

4.  At all times hereinafter mentioned, and from 1992
to and including 2004, the Plaintiff WEST 36th STREET REALTY,

LLC. (West 36th Street or collectively with the Co-Plaintiffs as "Plaintiffs") is a New York limited liability company and was and still is the sole owner of the premises located at and known as and by the street number 128 West 36th Street, County, City and State of New York.

5.   At all times hereinafter mentioned, and from 1992 to and including 2004 Plaintiff MACPIN REALTY, LLC (Macpin or collectively with the Co-Plaintiffs as "Plaintiffs") is a New York limited liability company and was and still is the sole owner of the premises located at and known as and by the street number 94-06 Roosevelt Avenue, County of Queens, City and State of New York.

6.   The holders of all of the membership interests in the Plaintiffs' Limited Liability Companies, West 23rd Street, West 36th Street and Macpin are all citizens of South Africa.

7.   Upon information and belief, and at all times hereinafter mentioned, Defendant WILLIAM GUERRERO ("Guerrero") is a citizen of the State of New York.

8.   Upon information and belief, and at all times hereinafter mentioned, Defendant CITY PROPERTY MANAGEMENT & DEVELOPMENT, INC. was and still is a domestic corporation and a citizen of the State of New York, with its principal offices located at 100 West 23rd Street, County, City and State of New York.

3

9.   Upon information and belief, and at all times hereinafter mentioned, Defendant WILLIAM GUERRERO ("Guerrero") was and still is the sole owner of all of the issued and outstanding shares of stock in the Defendant CITY PROPERTY MANAGEMENT & DEVELOPMENT, INC. ("City Property").

### III.   <u>JURISDICTION</u>

10.   This Court has jurisdiction pursuant to 28 USC §§1331 and 1391(a)(2).

11.   At all times hereinafter mentioned, the Plaintiffs, individually or collectively in the names of various Limited Liability Companies, have and still do own an equity interest in certain parcels of real property, together with the improvements erected thereon, located within the City and State of New York.

12.   The names of the entities in which the ownership of the real properties were and are presently filed are West 23rd Street Realty, LLC, West 36th Street Realty, LLC and Macpin Realty, LLC (the Entities).

13.   By agreements signed by or on behalf of the Plaintiffs and the Defendants between the years 1992 and 1995, City Property was appointed as the Managing Agent for the real estate owned by the Entities, which consisted of commercial properties.

14.   As an integral part of their appointment as the Real Estate Managers and Managing Agents for the Plaintiffs, the

4

Defendants were obligated on behalf of the Plaintiffs to collect the rents from the tenants, maintain the properties, pay all proper operating expenses and remit the remaining proceeds to the Plaintiffs.

15.  The agreements between the Plaintiffs and the Defendants, both written and thereafter at will, provided for the Defendants to be paid five percent (5%) of the rents collected as their fee for the management services for the Plaintiffs.

16.  On or about February 4, 2004, the Defendants were notified by or on behalf of the Plaintiffs that City Property was being terminated as the Managing Agent for the properties owned by the Entities.

17.  On or about May 10, 2006, the Defendants Guerrero and City Property commenced a lawsuit against the Entities by a Complaint filed in the Supreme Court of the State of New York, County of New York, bearing Index No.: 601648/2006 (the Lawsuit), wherein they sought damages in excess of $50 million inclusive of punitive damages for alleged breaches of contract, equitable estoppel and other relief.

18.  A Motion to Dismiss the lawsuit was thereafter brought on and argued before the Honorable Jane S. Solomon, Justice of the Supreme Court of the State of New York, County of New York, which resulted in a decision bearing date January 18, 2007, wherein the Complaint was dismissed with an award of costs and disbursements against the Defendants.  A Judgment of

5

Dismissal has been entered in the Office of the Clerk of New York County on January 25, 2007. A copy of the decision of Justice Solomon is annexed as Exhibit 1 and a copy of the Judgment is annexed as Exhibit 2.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(BREACH OF CONTRACT)**

19. An analysis of the financial records for these properties, conducted by an independent Certified Public Accountant revealed that the Defendants have overcharged the Plaintiffs $15,777.29 in management fees from rents collected at the West 23RD Street property, $15,405.00 from the Macpin property and $18,288.30 from the West 36th Street property. The total of excess fees retained by the Defendants, and discovered to date, is $49,470.59.

20. The same audit uncovered thousands of dollars in political contributions, which were not authorized by the Plaintiffs and were made contrary to explicit instructions by the Plaintiffs. These contributions extended into thousands of dollars over a period of years.

21. The same audit by the independent CPA shows that real estate taxes, and water and sewer charges were constantly paid late, which resulted in penalties and interest which were required to be paid by the Plaintiffs.

22. The audit further disclosed that the Defendants failed to include tax escalations in the commercial leases and

that they otherwise failed and/or neglected to bill tenants for charges properly attributable to them pursuant to their leases.

23.    The Defendants have been guilty of other misconduct in various and mesne instances which have been to the detriment and damage of the Plaintiffs.

24.    By virtue of the conduct of the Defendants as aforedescribed, the Defendants have breached their agreements with the Plaintiffs in a sum to be determined at the trial of this action, for which Plaintiffs demand Judgment together with interest according to law.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Fiduciary Obligations)

25.    Plaintiffs repeat and reallege each of the allegations contained in paragraphs of this Complaint numbered "1" through "24" inclusive, as if fully set forth herein.

26.    Defendants have materially breached their fiduciary duties and obligations to the Plaintiffs as alleged in paragraphs of this Complaint numbered "13" through "17" inclusive, as if fully set forth herein.

27.    By virtue of the multiple breaches of fiduciary obligations, the Plaintiffs have suffered particular monetary damage, in an amount to be determined at trial, but believed to be not less than $250,000.00.

7

## AND AS FOR A THIRD CAUSE OF ACTION
### (Conversion)

28.   Plaintiffs repeat and reallege each of the allegations contained in paragraphs of this Complaint numbered "1" through "27" inclusive, as if fully set forth herein.

29.   The conduct of the Defendants in having overcharged the Plaintiffs for Management fees and in having made unauthorized political contributions for their own purposes constitutes an unlawful conversion of monies which properly belong to the Plaintiffs for which the Plaintiffs seek Judgement in an amount to be determined at trial, but believed to be no less than $250,000.00, together with interest according to law.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Covenant of Good Faith)

30.   Plaintiffs repeat and reallege each of the allegations contained in the paragraphs of this Complaint numbered "1" through "29" inclusive, as if fully set forth herein.

31.   Defendants have materially breached their covenant of good faith in their dealings with the Plaintiffs in:

> (a)   having failed to adhere to the 5% fee agreements for management of the properties owned by the Plaintiffs, with resultant overcharges to the Plaintiffs in an amount of not less than $49,470.59;

8

(b)  having charged themselves a rent for the 23rd Street property that was less than the fair-market value;

(c)  having failed to provide for escalations in the rent they charged themselves;

(d)  having failed to charge or pay for the appropriate share of tax escalations;

(e)  having failed to charge or pay for water and sewer bills for the premises occupied by them as well as to tenants in the buildings owned by the Plaintiffs;

(f)  having refused to allow Plaintiffs' accountants to examine the financial records of the properties under management by the Defendants;

(g)  having made political contributions with Plaintiffs' funds even after being specifically instructed not to do so;

(h)  having failed to live up to the terms of the agreements with the Plaintiffs by, among other things, having paid property taxes late, thus incurring charges for penalties and interest, which ultimately were the burden of and paid by the Plaintiffs; and

9

(i)  having signed documents, including Income Tax
Returns, with a listing of Defendant GUERRERO
as President of one or more of the
Plaintiffs' corporations when, in fact, he
was not President nor even an officer
thereof.

32.   As a result of the Defendants' breaches of the
covenants of good faith, as set forth herein, the Plaintiffs have
suffered particular monetary damage, in an amount to be
determined at trial, but believed to be no less than $250,000.00.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Accounting)

33.  Plaintiffs repeat and reallege each of the
allegations contained in paragraphs of the Complaint numbered "1"
through "32" inclusive, as if fully set forth herein.

34.   The Defendants collected rents and made
disbursements from the rents so collected on behalf of the
Plaintiffs of which many of the disbursements were not
authorized.

35.   In addition, the Defendants failed to bill various
tenants and themselves (as tenants) for rents and other charges
properly due from them to the Plaintiffs.

36.   The Plaintiffs do not know and cannot ascertain
the exact amounts that were to be billed and collected, or the

10

amounts which were unlawfully and improperly paid out by the Defendants.

37. Plaintiffs demand that the Defendants render to the Plaintiffs a full and just accounting of the monies billed, or which were to be billed, and for the unlawful expenditures made by the Defendants from the monies of the Plaintiffs.

38. Plaintiffs have no adequate remedy at law.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(Defamation)**

39. Plaintiffs repeat and reallege each of the allegations contained in paragraphs of the Complaint numbered "1" through "18" inclusive as if fully set forth herein.

40. Shortly after the decision of Justice Solomon which dismissed the Complaint of the Defendants, a lead article was published on February 24, 2007, on the front page of a prominent South African Newspaper, the Weekend Post, entitled **"Tycoon Family Embroiled In Bitter R350M lawsuit."**

41. The entire article, which appeared below the front page headlines, was published and disseminated throughout South Africa and elsewhere and it read as follows:

> **"US manager claims Pitsiladis fired him after he questioned dealings:**
>
> **By Nicky Willemse**
>
> ONE of Port Elizabeth's wealthiest families is embroiled in a bitter R353-million court battle with a former employee in connection with their $150 million international property empire.

11

The American former managing agent for three of
the Pitsiladi family's New York City commercial real
estate companies, Bill Guerrero, claims the family
fired him unfairly after he raised questions about the
legality of certain business dealings contained in
financial and tax documents.

He had worked for the family for more than 10
years when he was axed in 2004.

However, the Pitsiladi family, who are suing Absa
for R23-million in connection with the Maureen Clifford
investment scheme scandal, says the claims by Guerrero
are unfounded.

Their lawyer, Dave Nezar, said Guerrero had been
fired for misappropriating funds.

The five members of the Pitsiladi family named in
Guerrero's complaint are brothers Aristides "Pops"
Pitsiladi, Nicholas Pitsiladi, Constantine Pitsiladi,
their sister Maria Coutsourides and her husband
Dimitrius Coutsourides.  The family owns several
businesses in Port Elizabeth and citrus farms in the
Sundays River area, along with liquor company Pinmac,
which is in partnership with Prestons.

They also own several hotels and a shopping mall
in Greece.

Members of the Greek community in the city say the
family has always been tight-lipped about their
overseas business ventures.

Guerrero's complaint was dismissed by the Supreme
Court in New York last month, but he has filed an
appeal with the Appellate Division of the New York
Supreme Court against that decision.  The appeal is
expected to be heard later this year.

In court papers, Guerrero says he was appointed in
the early 1990's as the managing agent for three real
estate companies - West 23rd Street Realty, West 36th
Street Realty and Macpin Realty.

In October 2003, he started to question certain
activities 'contained in various financial documents'
and in their 'application for tax amnesty in South
Africa with respect to taxes due on their foreign
investments' in the US and Greece.  Guerrero claims he
repeatedly requested a turnover of books and records of
the three real estate companies.

These requests were apparently refused, but he
said he was assured by Nico Pitsiladi and the Pitsiladi
partner's accountants that the activities were 'proper
and legal'.

12

In February 2004 Guerrero was told his contract was being terminated, and within a month management was transferred to a new agent.

Guerrero claims his employment contract stated that 60 days written notice was required.

He also alleges that the Pitsiladis were involved in Clifford's Usapho Trust, and solicited US investors in the scheme.

In their plea document, the Pitsiladi family refute Guerrero's claims, saying he did not have access to their financial or tax documents, and that no activities conducted through the companies were 'in any way tainted with impropriety or unlawful'.

They also deny acting 'improperly or unlawfully in relation to the Usapho Trust'.

Guerrero said: 'I feel very strongly that my dismissal was a result of the questions I raised.'

Weekend Post also received a document, which has apparently been circulating anonymously throughout the close-knit Greek community in New York City, which contains a number of damning allegations - relating to financial dealings - against the Pitsiladi family.

The family's US trial specialist, Jack Dweck, said he did not know of any of any anonymous documents, but New York City attorney Edmund Nahas, who handles the Pitsiladis' commercial matters, said he had received the document late last year but dismissed the claim as untrue and defamatory.

A member of the Port Elizabeth Greek community, who asked not to be named, said the Pitsiladis had always been very secretive about their US properties.

'It's probably only the inner circle who knows, but Pops is responsible for supervising the family's overseas interests.

'He travels to the US and Greece two to three times a year to do that.'

The Pitsiladi family, together with a number of colleagues, are claiming R23-million from Absa, saying the bank falsely assured them Maureen Clifford's Usapho Trust was a safe investment.

In March last year the civil case by Pops Pitsiladi and 11 other family members, business partners or family business trusts was postponed indefinitely in the Port Elizabeth High Court.

It will only take place once the ongoing Clifford fraud trial case had been finalized."

A copy of the Article is annexed as Exhibit 3.

13

42. Upon information and belief, the direct source of this information published in the South African Weekend Post was the Defendant William Guerrero, who furnished the defamatory matter to one Nicky Willemse and possibly others with the intent to harm, embarrass, humiliate and degrade the Plaintiffs, to accuse them of having engaged in fraudulent activities, of being dishonest, and to injure them in their community, in the areas where they had investments and to pursue their livelihood.

43. At the time of the dissemination of the information by the Defendant Guerrero to the South African Weekend Post (Exhibit 3) the Defendant knew that the contents of the statements and letter were untrue and were made with the intent to falsely injure the Plaintiffs' good names and reputations, and to bring them into public scandal, infamy, ill repute and disgrace, and to hold them up as objects of scorn, hatred, ridicule, obloquy, shame and disgrace in and among their neighbors, business associates, fellow citizens, acquaintances and friends.

44. By reason of the publication and circulation of the false and defamatory statements of and about the Plaintiffs by the Defendants, Plaintiffs have been greatly injured and have suffered external damages to their good names and reputations within their community, and in their business as well, in the sum of Twenty-Five Million ($25,000,000.00) Dollars.

**WHEREFORE,** Plaintiffs ARISTEDES PITSILADI, NICHOLAS PITSILADI, WEST 23rd STREET REALTY, LLC, WEST 36TH STREET REALTY, LLC and MACPIN REALTY, LLC respectfully demand judgment against the Defendants as follows:

      (a)   On the First Cause of Action, for Breach of Contract in such sum as may be determined to be due upon the trial of this action;

      (b)   On the Second Cause of Action, for Breach of Fiduciary Obligations, in an amount to be determined at trial, but believed to be no less than $250,000.00;

      (c)   On the Third Cause of Action for Conversion, in an amount to be determined at trial, but believed to be no less than $250,000.00;

      (d)   On the Fourth Cause of Action for Breach of the Covenant of Good Faith, in an amount to be determined at trial, but believed to be no less than $250,000.00;

      (e)   On the Fifth Cause of Action, that the Defendants render a just and full accounting of all monies that were received and/or to be billed by the Defendants to the tenants and to themselves and for all expenditures made by them of the monies collected by them for the Plaintiffs, and upon such an accounting that the Defendants be directed to pay such sums to the Plaintiffs;

(f)     On the Sixth Cause of Action, for the sum of Twenty-
        Five Million ($25,000,000.00) dollars in compensatory
        damages, together with an award of Ten Million
        ($10,000,000.00) Dollars in punitive damages;

(g)     For reasonable counsel fees for the prosecution of this
        action;

(h)     together with interest and the costs and disbursements
        of this action.


Dated:      New York, New York
            July 3, 2007

                            THE DWECK LAW FIRM, LLP
                            Attorneys for Plaintiffs


                            By:
                                Jack S. Dweck (0659)

                            75 Rockefeller Plaza
                            New York, New York 10019
                            (212) 687-8200

16

**EXHIBIT 1**

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: JANE S. SOLOMON
*Justice*

PART SS

Index Number : 601648/2006
GUERRERO, WILLIAM
vs
WEST 23RD STREET REALTY LLC.
Sequence Number : 001
DISMISS ACTION

INDEX NO. _____
MOTION DATE 6/23/06
MOTION SEQ. NO. _____
MOTION CAL. NO. _____

The following papers, numbered ___ to ___

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits | 1-4 |
| Answering Affidavits — Exhibits | 5-7 |
| Replying Affidavits | 8 |

Cross-Motion: ☐ Yes ☒ No

Upon the foregoing papers, it is ordered that this motion *is decided in accordance with the annexed memorandum decision and order.*

Dated: 1-18-07


JANE S. SOLOMON
J.S.C.

Check one: ☒ FINAL DISPOSITION ☐ NON-FINAL DISPOSITION
Check if appropriate: ☐ DO NOT POST ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 55
----------------------------------X
WILLIAM GUERRERO, CITY PROPERTY
MANAGEMENT & DEVELOPMENT, INC.,

                Plaintiffs,

     -against-

WEST 23RD STREET REALTY, LLC,
WEST 36TH STREET REALTY, LLC, and
MACPIN REALTY, CORP.,

                Defendants.
----------------------------------X
JANE S. SOLOMON, J.

INDEX NO. 601648/06

DECISION and ORDER

       In this breach of contract action, defendants West 23rd

Street Realty, LLC ("West 23rd LLC"), West 36th Street Realty, LLC

("West 36th LLC"), and Macpin Realty, Corp. ("Macpin") move to

dismiss the Amended Complaint. For the reasons described herein,

the motion is granted.

       Defendants each own a parcel of developed commercial

real estate. Their shareholders are residents of the Republic of

South Africa. Plaintiffs are City Property Management &

Development, Inc. ("City Management"), a real estate management

company, and William Guerrero ("Guerrero"), its sole shareholder.

       On or about November 1, 1992, City Management entered

into a written contract with the shareholders individually to be

the managing agent of their Manhattan properties located at 100

West 23rd Street ("West 23rd Street Premises") and 128 West 36th

Street ("West 36th Street Premises"), and entered into a separate

contract with defendant Macpin, already in existence, to be the

managing agent of its Queens property located at 94-26 Roosevelt

Avenue ("Macpin Premises").  In 1995, ownership of the West 23rd

Street Premises and the West 36th Street Premises was transferred

by the individuals to the defendants West 23rd LLC and West 36th

LLC, respectively, and by agreements dated on or about November 1,

1995, each of them entered into new written management agreements

with City Management.

The texts of the 1992 and 1995 agreements (collectively,

the "Agreements") are identical, except as to the parties and

premises.  Each provides that City Management will appoint William

Guerrero as the individual manager for the relevant property.  Each

Agreement contains the following provision:

> 5.  Term of Agreement:
> This Agreement shall commence on the [__ day of
> _____ ][1] and end on the last day of the month twelve
> (12) calendar months thereafter.  This Agreement, if
> not previously renewed in writing for an additional
> fixed period, may be cancelled effective at the end of
> the term by either party giving written notice not less
> than sixty (60) days prior to the expiration of the
> term.  If not so cancelled, the term shall be extended
> for an additional twelve (12) calendar months subject
> to cancellation in accordance with the provisions
> outlined above.

Paragraph 5 in the Macpin Premises agreement states that the

commencement month is "November 1992."  The month is not set forth

---

[1] They differ only in respect of this space.

2

in the 1995 agreements. No party contests that the term in the 1995 contracts was to commence on November 1, 1995, the date of the document, just as the term of the 1992 agreement starts on the first day of the month they were made. As indicated below, the disagreement is over the renewal term.

Plaintiffs allege that they had a cordial relationship with the South African shareholders until October 2003, when Guerrero questioned certain of their activities unrelated to the buildings and refused to confirm to South African authorities facts related to their tax amnesty application. Plaintiffs further allege the shareholders earlier had made Guerrero an offer to give him a favorable lease for an office in the West 23rd Street Premises, and also had asked him to locate additional properties for them to acquire. Finally, Plaintiffs allege that because he questioned their activities, on February 12, 2004, one of the shareholders orally informed Guerrero that City Management would be terminated as managing agent. On March 15, 2004, a new agent was appointed.

Based on the foregoing, Plaintiffs brought this action for breach of contract damages and for equitable estoppel on the ground that the agreements never were terminated in writing. Plaintiffs also seek $50 million in punitive damages. Defendants move to dismiss all claims on the grounds that the Amended

3

Complaint fails to state a cause of action; the alleged breach of contract claim is not permitted as a matter of law; and any cause of action brought by the corporate plaintiff City Management cannot also be brought by its shareholder. In particular, they claim the 1992 agreements ended on October 31, 1994, and the 1995 agreements ended on October 31, 1997, and that Plaintiffs' later engagement was at will.

**City Management's Breach of Contract Claims**

Defendants' argument that the Agreements all expired before 2004 and that the parties' subsequent arrangement was oral and at will is correct. See <u>Vermont Teddy Bear Co. v. Madison Realty Co.</u>, 1 N.Y.3d 470 (2004); <u>150 Broadway v. Bodner</u>, 14 A.D.3d 1 (1st Dep't 2004); <u>Lobosco v. N.Y. Tel. Co.</u>, 96 N.Y.2d 183 (1989).

Paragraph 5 of each of the agreements first sets forth an initial term of twelve calendar months, which if not renewed for "an additional fixed period" or cancelled effective at the end of the term by a minimum of sixty days written notice, will be renewed for an additional twelve month term. The last sentence of Paragraph 5, on which Plaintiffs rely for their argument that absent a writing the Agreements automatically renew at yearly intervals, does not support their claim. That sentence provides only for "an additional" twelve month term. Once this one year term ended, the extraneous clause "subject to cancellation in

4

accordance with the provisions outlined above" does not constitute

a basis to claim further yearly renewals under the written

agreement.

In support of their interpretation, Defendants argue

that the 1995 agreements were executed in order to continue

Plaintiffs' retention in writing upon the expiration of the 1992

agreements.  This is unpersuasive because the 1995 agreements

covered only the properties where ownership changed that year.

However, the automatic renewal in perpetuity argued by

Plaintiffs is outside the specific language of the Agreements and

is not in accordance with New York law.  See Protection Indus.

Corp. v. DDB Needham Worldwide, Inc., 306 A.D.2d 175 (1t Dep't

2003).  Given that their relationship was at will, Defendants were

free to terminate the Agreements at any time, with or without

cause, without notice and without liability.  See Ingle v. Glamore

Motor Sales, 73 N.Y.2d 183 (1989).  Accordingly, Defendants'

February 12, 2004 termination notice to Guerrero was proper and

their motion seeking dismissal of the First, Second and Third

Causes of Action is granted.

Because this Court has found that the breach of contract

claims do not survive, there is no need to address Defendants'

additional contention that the pleadings are fatally defective

because they fail to set forth a specific amount of damages.

**Guerrero's Breach of Contract Claim**

The Fourth Cause of Action for breach of contract

brought by Guerrero must be dismissed as a matter of law, because

as a shareholder he has no individual cause of action for an

alleged wrong against a corporation.  See <u>Abrams v. Donati</u>, 66

N.Y.2d 951 (1985).  That the Agreements provide that City

Management will appoint Guerrero as manager does not make him a

third party beneficiary of City Management's contracts with

Defendants.

**Equitable Estoppel**

The Fifth Cause of Action alleging equitable estoppel is

dismissed because it is duplicative of the first three Causes of

Action.  Plaintiffs' mere expectation that they would continue to

manage Defendants' properties does not constitute a viable separate

claim.  See <u>Atkins & O'Brien v. ISS Int'l Service System, Inc.</u>, 252

A.D.2d 446 (1st Dep't 1998).

**Punitive Damages**

In any event, Plaintiffs' claim for $50 million in

punitive damages is dismissed because punitive damages are not

recoverable in ordinary breach of contract disputes.  Such damages

are not to remedy private wrongs but to vindicate public rights.

6

See <u>Mulder v. Donaldson, Lufkin & Jenrette</u>, 208 AD2d 301 (1st Dep't

1995).    Plaintiffs are correct that "where the breach of contract

.... involves a fraud evincing a 'high degree of moral turpitude,'

and demonstrating 'such wanton dishonesty as to imply a criminal

indifference to civil obligations,' punitive damages are

recoverable if the conduct was 'aimed at the public generally.'"

<u>Id.</u>, quoting <u>Walker v. Sheldon</u>, 10 N.Y.2d 401, 404-05 (1961).

The Amended Complaint alleges that Defendants terminated

the Agreements in order to conduct "their business without having

the legality of their business dealings questioned ... and [their

termination] was the product of a deliberate plan to enable the

defendants to engage in acts which were improper and unlawful to

the injury of the public," (Amended Complaint, ¶ 66).  However,

this is a dispute between private parties.  Because compensatory

damages are adequate to make City Management whole, even had the

claims survived this motion, punitive damages could not be sought.

Accordingly, it hereby is

ORDERED that Defendants' motion to dismiss the complaint

is granted, and the Clerk is directed to enter judgment accordingly

with costs and disbursements as taxed.

Dated: January 18, 2007

ENTER:

J.S.C.

JANE S. SOLOMON

7