UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------x

ARISTIDES "POPS" PITSILADI, NICHOLAS                    Civil Action No.:
PITSILADI, Individually and as Members of              07 Civ. 6605 (JGK)
WEST 23RD STREET REALTY LLC, WEST 36TH
STREET REALTY LLC AND MACPIN REALTY LLC,
WEST 23RD STREET REALTY LLC., WEST 36TH
STREET REALTY LLC AND MACPIN REALTY LLC,

                                        Plaintiffs,

              -against-


WILLIAM GUERRERO, CITY PROPERTY
MANAGEMENT AND DEVELOPMENT INC.,

                                        Defendants.

-----------------------------------------------------------------------------x


DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM



LAW OFFICES OF MICHAEL A. HASKEL
Attorneys for Defendants
167 Willis Avenue
Mineola, NY 11501
Tel.: (516) 294-0250
Fax: (516) 294-0854 (not for service)

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT .............................................................................. 1

BACKGROUND ....................................................................................................... 1

STANDARD OF REVIEW ...................................................................................... 3

ARGUMENT ............................................................................................................ 4

    A.  The Statement Is Not a Fair and Accurate Report of a Judicial Proceeding ................... 5

        1)  The Statement Does Not Accurately Reflect a Position Taken by Any Party in Any Court Proceeding ................................................................................. 5

        2)  The "Litigant's Privilege" Does Not Expand the Protections of Civil Rights Law § 74 to Statements That Do Not Fairly and Accurately Report Judicial Proceedings ........................................................................................... 7

    B.  The Pitsiladis Are Liable for the Statement to the Press ................................... 9

        1)  The Pitsiladis Are Vicariously Liable for Nezar's Statements Under Agency Principles ............................................................................................... 9

        2)  The Pitsiladis Are Liable for the Statement Because They Took Part in Its Procurement, Composition, and Publication ...................................... 10

        3)  The Attorney-Client Privilege Does Not Bar Proof of the Pitsiladis' Instructions to Nezar ....................................................................................... 12

    C.  To the Extent that a "Gross Irresponsibility" or Malice Standard Applies, Guerrero Adequately Pled Same ...................................................................... 14

        1)  To the Extent That Defamatory Statement Involved a Matter of Public Concern, Guerrero Adequately Alleged That the Pitsiladis Acted with Gross Irresponsibility ...................................................................................... 14

        2)  To the Extent That a Malice Standard Applies, Guerrero Adequately Pled Malice ........................................................................................................ 15

CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

**Statutes:**

Fed. R. Civ. P. 12(b)(6)................................................................................... 3, 4

Fed. R. Civ. P. 9......................................................................................... 14, 16

Fed. R. Civ. P. 8............................................................................................... 14

NY Civil Rights Law § 74 .......................................................... .5, 6, 7, 8, 10

**Cases:**

*Altschuler v. Univ. of Pa. Law Sch.*, No. 95 Civ. 249 (LLS), 1997 WL 129394 (S.D.N.Y. Mar. 21, 1997), *aff'd*, 201 F.3d 430 (2d Cir. 1999), *cert. denied*, 530 U.S. 1276 (2000) ..................... 14

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ................................ 4

*Benedict P. Morelli & Assocs. P.C. v. Cabot*, No. 601556/05, 11 Misc. 3d 1065(A), 2006 N.Y. Slip. Op. 50390(U) (Sup. Ct. N.Y. County Jan. 17, 2006) ............................................................ 5

*Bridge C.A.T. Scan Assocs. v. Ohio-Nuclear Inc.*, 608 F. Supp. 1187 (S.D.N.Y. 1985)...... 7, 9, 10

*Calabro v. Stone*, 225 F.R.D. 96 (E.D.N.Y. 2004) ....................................... 12

*Campo v. Paar*, 18 A.D.2d 364 (1st Dep't 1963) ......................................... 11

*Chapadeau v. Utica Observer-Dispatch, Inc.*, 38 N.Y.2d 196 (1975) .................................. 14, 15

*Church of Scientology Int'l v. Eli Lilly & Co.*, 778 F. Supp. 2d 661 (S.D.N.Y. 1991) ................ 16

*Cooper v. Parsky*, 140 F.3d 433 (2d Cir. 1998)............................................... 4

*Cubby, Inc. v. Compuserve Inc.*, 776 F. Supp. 135 (S.D.N.Y. 1991) ............................................ 10

*Cuthbert v. Nat'l Org. for Women*, 207 A.D.2d 624 (3d Dep't 1994)............................................ 8

*Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669 (2d Cir. 1995)........................................................ 3

*Geisler v. Petrocelli*, 616 F.2d 636 (2d Cir. 1980) ........................................ 14

*Glover v. Goord*, No. 9:06-CV-1037 (LEK/DEP), 2007 WL 2454193 (N.D.N.Y. Aug. 22, 2007) ................................................................................................................................................ 3

*Hydraflow Inc. v. Enidine Inc.*, 145 F.R.D. 626 (W.D.N.Y. 1993) .............................................. 12

*Karades v. Ackerly Group Inc.*, 423 F.3d 107 (2d Cir. 2005) ........................................ 6

*Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92 (2d Cir. 2000) ............................. 15

*Liberman v. Gelstein*, 80 N.Y.2d 429 (1992) ........................................................... 5, 16

*Log On America, Inc. v. Promethean Asset Mgmt. LLC*, 223 F. Supp. 2d 435 (S.D.N.Y. 2001)... 3

*Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285 (S.D.N.Y. 2005) ............................ 5

*Matter of Fiore*, 204 A.D.2d 637, 637 (2nd Dept 1994) ............................................ 12

*Morsette v. The Final Call*, 278 A.D.2d 81 (1st Dep't 2000) ....................................... 5

*Murray v. Watervliet City Sch. Dist.*, 130 A.D.2d 830 (3d Dep't 1987) ....................... 9

*Pisani v. Staten Island Hosp.*, 440 F. Supp. 2d 168 (E.D.N.Y. 2006) ......................... 5, 6, 7, 8, 11

*Pollnow v. Poughkeepsie Newspapers, Inc.*, 107 A.D.2d 10 (2d Dep't 1985) .............. 15

*Richards v. AXA Equitable Life Ins. Co.*, No. 06 Civ. 3744 (PAC), 2007 WL 3084968 (S.D.N.Y. Oct. 22, 2007) ........................................................................................................ 4

*Rivera v. Greenberg*, 243 A.D.2d 697 (2d Dep't 1997) ............................................. 8

*Rubenstein v. Manhattan & Bronx Surface Operating Auth.*, No. CV-96-902, 1997 WL 833456 (E.D.N.Y. Oct. 8, 1997) ...................................................................................... 11

*Ryder v. Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774 (2d Cir. 1984) ..................................................................................................................... 4

*Silver v. Kuehbeck*, No. 05 Civ. 35 (RPP), 2005 WL 2990642 (S.D.N.Y. Nov. 7, 2005) ........... 13

*Teicher v. Bellan*, 7 A.D.2d 247 (4th Dep't 1959) .................................................... 16

*The Savage Is Loose Co. v. United Artists Theatre Circuit Inc.*, 413 F. Supp. 555 (S.D.N.Y. 1976) .......................................................................................................... 5, 7, 8

*Treppel v. Bovail Corp.*, 233 F.R.D. 363 (S.D.N.Y. 2006) ...................................... 15

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in opposition to the motion of the plaintiffs, Aristides Pitsiladi ("A. Pitsiladi") and Nicolas Pitsiladi ("N. Pitsiladi") (collectively, "the Pitsiladis"), seeking to dismiss the counterclaim interposed by defendant William Guerrero ("Guerrero").

## BACKGROUND

From in or about 1992 to April 1, 2004, City Property Management and Development Corp. ("City Property"), was the managing agent of properties located at 100 West 23rd Street, New York, New York, 128 West 36th Street, New York, New York and 94-26 Roosevelt Avenue, Queens, New York ("Pitsiladi Properties"), title to which are held by West 23rd Street Realty LLC, West 36th Street Realty LLC, and MacPin Realty (the "Pitsiladi Entities"), companies owned by the Pitsiladis, Constantine Pitsiladi, Maria Coutsourides and Dimitrius Coutsourides. City Property, which is wholly owned by Guerrero, was terminated in 2004 without explanation, following which City Property and Guerrero commenced an action in the Supreme Court of the State of New York, County of New York under Index No. 601648/2006 ("State Court Action"). In the State Court Action, City Property alleged that its termination did not comply with the written management agreements between the Pitsiladi Entities, and was orchestrated to conceal unlawful activity by the Pitsiladis. The State Court Action was dismissed for failure to state a cause of action (*see* January 18, 2007 Decision & Order (per Hon. Jane Solomon), Exhibit 1 to Complaint (Exhibit 1 to Moving Affidavit of Jack S. Dweck herein sworn to October 17, 2007 ("Dweck Aff." )) ("Jan. 18, 2007 Order"), and the Appellate Division, First Department affirmed on the basis of the statute which provides that automatic renewal provisions in certain contracts are void. Insofar as the State Court Action was dismissed before the filing of

1

an Answer to the State Court Action, neither the Pitsiladis nor the Pitsiladi Entities took a

position in that litigation concerning the reason that City Property was terminated as managing

agent of the Pitsiladi Properties. (Exhibit 1 to Complaint, Exh. 1 to Dweck Aff.)

On July 3, 2007 this action was instituted by the Pitsiladis, individually and on behalf of

the Pitsiladi Entities. Plaintiffs seek an accounting and money damages for purported breaches

of contract, fiduciary duty, a "covenant of good faith",[1] and for conversion. According to the

complaint, these claims all arise out of City Property's service, prior to its termination in 2004,

as the Pitsiladi Entities' managing agent.

The complaint also asserts a defamation claim stemming from an article published on

February 24, 2007 in the *Weekend Post* ("Feb. 24 Article"). The plaintiffs allege that Guerrero

provided a member of the South African press with information concerning the State Court

Action. Plaintiffs allege that the Feb. 24 Article is defamatory insofar as it contains commentary

by Guerrero regarding the State Court Action that is alleged to be false and injurious to their

reputation.

The Feb. 24 Article is also the source of the publication of what Guerrero contends are

defamatory statements provided to the press at the behest of the Pitsiladis. Specifically, Guerrero

asserted that the Pitsiladis told their South African attorney, Dave Nezar ("Nezar"), to report to

the *Weekend Post* that City Property was terminated because of Guerrero's misappropriation of

funds, with the intent that the South African press would print such statement. (*See* Answer,

Exhibit 2 to Dweck Aff., ¶¶ 59-60.) As a result, the Feb. 24th Article contained the statement

that: "[The Pitsiladis'] lawyer, Dave Nezar, said Guerrero had been fired for misappropriating

funds" (the "Statement"). The Statement was also published on the Internet. Guerrero asserts

---

[1] Although styled as a separate cause of action, this alleged claim appears to be duplicative of plaintiffs' cause of action for breach of contract.

2

that the Pitsiladis instructed Nezar to comment to the press that Guerrero was fired for stealing, despite their actual knowledge that this Statement was false. (Answer, ¶ 61.)

In the Answer herein, dated October 8, 2007, Guerrero asserted a counterclaim, contending that the Statement was published by the *Weekend Post* at the instigation of the Pitsiladis and constituted defamation *per se*, insofar as it both accused him of the crime of conversion, and impugned his fitness to carry out his business or profession as a real estate management professional. (Answer ¶ 64.) Plaintiffs have now moved to dismiss Guerrero's counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted. The motion should be denied in all respects.

## STANDARD OF REVIEW

A "motion to dismiss, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon the court to gauge the facial sufficiency of [a] pleading, utilizing as a backdrop a pleading standard which is particularly unexacting in its requirements." *Glover v. Goord*, No. 9:06-CV-1037 (LEK/DEP), 2007 WL 2454193, at *3 (N.D.N.Y. Aug. 22, 2007). A complaint or counterclaim need only contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Id.*

"In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party." *Id.* Further, "[t]he burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the [claimant] is likely ultimately to prevail, but whether the claimant is entitled to offer evidence to support the claims." *Id.* (citing *Log On America, Inc. v. Promethean Asset Mgmt. LLC*, 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)

3

(other quotations omitted))). "The task of a court ruling on a 12(b)(6) motion is merely to address the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) (quoting *Ryder v. Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)). In doing so, "[t]he court is required to accept as true all factual allegations in the complaint." *Id.* Therefore, a district court may dismiss a claim pursuant to Fed. R. Civ. P. 12(b)(6) "only if the plaintiff's factual allegations are not sufficient 'to state a claim to relief that is plausible on its face.'" *Richards v. AXA Equitable Life Ins. Co.*, No. 06-CIV-3744 (PAC), 2007 WL 3084968, at *2 (S.D.N.Y. Oct. 22, 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

## ARGUMENT

Although the brief submitted by the Pitsiladis is somewhat unclear in presenting its legal arguments, it appears that the Pitsiladis contend that Guerrero's defamation claim was inadequately pled in the following ways: (1) the Statement was privileged because it constituted a fair and accurate report of a judicial proceeding, (2) in any event, the Pitsiladis may not be held liable for any statement made to the press by Nezar, and (3) since the statement was made to the press or was subject to a qualified privilege, Guerrero was required to plead gross irresponsibility

and/or malice, and he failed to adequately do so.[2] None of these arguments has merit, as will be discussed below.[3]

    A.    <u>The Statement Is Not A Fair and Accurate Report of A Judicial Proceeding</u>

        1.    The Statement Does Not Accurately Reflect a Position Taken by Any Party in Any Court Proceeding

New York Civil Rights Law § 74 provides, in relevant part, that "a civil action cannot be maintained against any person, firm, or corporation, for the publication of a fair and true report of any judicial proceeding ...." Thus, a defendant may not be held liable for "merely restating the allegations of a complaint that was both privileged and available to the public...." *The Savage Is Loose Co. v. United Artists Theatre Circuit Inc.*, 413 F. Supp. 555, 561 (S.D.N.Y. 1976). However, the privilege for fair and true reports of legal proceedings is limited in scope by the text of Civil Rights Law § 74 - it applies only when the allegedly defamatory statement is a "fair and true" report of a legal proceeding. *See, e.g., Pisani v. Staten Island Hosp.*, 440 F. Supp. 2d 168, 177 (E.D.N.Y. 2006) (citing *Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 294 (S.D.N.Y. 2005) ("out of court statements such as press releases, which are not covered by the litigants' privilege, are privileged only to the extent that they represent fair and true reports of what occurred in the proceeding...."). A report is "fair and true" when it is "substantially accurate." A report will not be considered "substantially accurate" if the statements at issue "have a different effect on the mind of the recipient than the actual truth" and will not be

---

[2] Plaintiffs also mentioned in passing, in their attorney's affidavit, that Guerrero "failed to plead any special damages," *see* Dweck Aff., ¶3 although they do not elaborate on this point in their Memorandum of Law. Insofar as Guerrero alleged defamation *per se*, in that the Statement fits under two separate categories, allegation of: 1) a serious crime; and 2) injuring another in trade, business or profession, which, either standing alone, are sufficient to "constitute defamation per se, 'the law presumes that damages will result and they need not be alleged or proven.'" *See, e.g,, Benedict P. Morelli & Assocs. P.C. v. Cabot*, No. 601556/05, 11 Misc. 3d 1065(A), 2006 N.Y. Slip. Op. 50390(U), at *2 (Sup. Ct. N.Y. County Jan. 17, 2006) (citing *Liberman v. Gelstein*, 80 N.Y.2d 419, 435 (1992)). *See also Morsette v. The Final Call*, 278 A.D.2d 81, 81 (1st Dep't 2000).

[3] The Pitsiladis have not addressed the choice of law questions presented by this case, instead choosing to apply New York law or "federal common law" to the various issues presented. For the purposes of this motion, Guerrero agrees to the application of New York and federal law to the governance of all issues.

protected by Civil Rights Law § 74 if the statements "suggest more serious conduct than actually suggested in the official proceeding." *Id.* (citing *Karades v. Ackerly Group Inc.*, 423 F.3d 107, 119 (2d Cir. 2005)).

Civil Rights Law § 74 does not protect the Statement because it was not a fair and true report of the Pitsiladis' position in the State Court Action. Neither the Pitsiladis nor the Pitsiladi Entities ever accused Guerrero of misappropriating funds in the State Court Action. Indeed, the defendants in the State Court Action never took a position concerning the reason that City Property was terminated. As the Jan. 18, 2007 Order demonstrates, the State Court Action was disposed of on a pre-Answer motion to dismiss because Justice Solomon found that the parties' arrangement was terminable at will, "with or without cause, without notice, and without liability." (*Id.* at 5.) Since Justice Solomon was required to accept all of the allegations in Guerrero and City Property's complaint as true in deciding the motion to dismiss, the defendants in the State Court Action never proffered any alternative explanation for City Property's termination, much less indicated that the reason for the termination had anything to do with misappropriating funds. The Statement that City Property was terminated for misappropriating funds clearly was not a "substantially accurate" recitation of the position taken by the defendants in the State Court Action, and clearly elicited a "substantially different effect on the mind of the recipient" than would have been evoked by an accurate report of the position taken in the pleadings and motion papers that they submitted in the State Court Action. *See Pisani*, 440 F. Supp. 2d at 294.

Nor is the Statement privileged as a fair and true report of *this* proceeding. The complaint herein is dated July 3, 2007, but the *Weekend Post* article forming the basis for both sides' respective defamation claims in this action is dated February 24, 2007 - over four months

*prior* to the commencement of the instant case. Therefore, the Statement could not possibly be a report - fair and true or otherwise - of anyone's position in *this* case. The timing of the Statement conclusively proves that Mr. Nezar was not describing the Pitsiladis' position in the instant case, and, as noted above, it does not reflect the position that the Pitsiladis and Pitsiladi Entities took in the State Court Action.

       2.    The "Litigant's Privilege" Does Not Expand the Protections of Civil Rights Law § 74 to Statements That Do Not Fairly and Accurately Report Judicial Proceedings

       The Pitsiladis try to claim greater protection for the Statement to the press than is warranted by existing law by conflating the limited protection of Civil Rights Law § 74, which, as discussed above, protects only "fair and true" reports of judicial proceedings, with the common law "litigant's privilege." (See, e.g., Plaintiff's Brief pp. 13-14) This privilege, which is broader in scope, protects statements that are pertinent to a lawsuit and made within the confines of the litigation. *See, e.g., The Savage Is Loose,* 413 F. Supp. at 560. While all that is necessary to claim the common law litigant's privilege is that "the alleged defamatory material may possibly bear on the issues in litigation now or at some other time," *id.* at 561, the privilege does *not* extend to statements made to the press by litigants or their attorneys, *see, e.g., Bridge C.A.T. Scan Assocs. v. Ohio-Nuclear Inc.*, 608 F. Supp. 1187, 1195 (S.D.N.Y. 1985) ("The delivery of a copy or report of a complaint is not a statement made during the course of judicial proceedings and therefore is not protected by the common law privilege afforded such statements... Delivery of a complaint or summary of a complaint to the press is neither essential nor relevant to the judicial proceedings themselves. It in no way aids a party in furthering his or her cause before a judicial tribunal and, hence, must fall outside the privilege afforded statements made during the course of judicial proceedings.") *See also Pisani,* 440 F. Supp. 2d at 177 ("out of court statements such as press releases... are not covered by the litigants' privilege....").

Rather, the only privilege generally applicable to press releases concerning litigation is that provided by Civil Rights Law § 74. Press releases may give rise to liability when they do not accurately reflect the claims set forth in the litigation being discussed, or go beyond such allegations, even if the person reporting on the litigation is a party or a party's attorney. *See, e.g., Rivera v. Greenberg,* 243 A.D.2d 697, 698 (2d Dep't 1997) (statement made by attorneys at a press conference that plaintiff was "a racist cop who must be arrested," and had sexually assaulted their clients and raped 100 other unidentified men was not privileged since the statement was not a fair and true report of a legal proceeding); *Cuthbert v. Nat'l Org. for Women,* 207 A.D.2d 624 (3d Dep't 1994) (press release stating that student was raped by a member of a college's hockey team and that student had commenced a civil action against him was not privileged; press release did not purport to describe the allegations in student's pending case, but rather unequivocally accused plaintiff of rape); *Pisani,* 440 F. Supp. 2d at 177-78 (reasonable jury could find that settling hospital defendant's press release in Medicaid fraud case, in which it implicitly admitted misconduct by former executives, including plaintiff, was not a fair and true report of a judicial proceeding; in the actual settlement documents, hospital neither admitted or denied the charged fraudulent conduct, and, furthermore, press release implied the actual fraud was greater than that suggested by the complaint and settlement agreement). In contrast, in *The Savage Is Loose,* 413 F. Supp. at 561, which was cited by the Pitsiladis, the District Court found that statements made by the plaintiffs' attorney to the press were privileged because such remarks were confined to "repeating the substance of the complaint," so that "a comparison of the [news article containing the attorney's statement] with the allegations of the complaint makes clear that the publication is a fair and true report of the complaint." The cited case did *not,* as the

8

Pitsiladis claim, hold that any comment made by a party's attorney to the media that in any way related to pending litigation is privileged.

B.    The Pitsiladis Are Liable for the Statement to the Press

The Pitsiladis next argue that, even if the Statement was defamatory, the Pitsiladis cannot be held liable for any statement made by their attorney.  However, since Guerrero alleged in his counterclaim that, with the intent of causing the Statement to be published, the Pitsiladis "instructed or authorized" Nezar to respond to press inquiries about the State Court Action by stating that City Property was terminated as managing agent of the Pitsiladi Properties due to Guerrero's misappropriation of funds (Answer ¶ 59), the complaint sufficiently alleges the Pitsiladis' liability for the Statement.

1).    The Pitsiladis Are Vicariously Liable for Nezar's Statements Under Agency Principles

The same rules applicable to the imposition of vicarious liability for other torts apply to defamation claims.  *See, e.g., Murray v. Watervliet City Sch. Dist.*, 130 A.D.2d 830, 831 (3d Dep't 1987) (acknowledging that employer may be held liable for the slander of employee acting within the scope of her employment).

Since a client and his attorney stand in the relationship of principal and agent, a client may be held responsible for defamatory statements made by his attorney, as agent, within the scope of the legal representation.  *See, e.g., Bridge C.A.T. Scan Associates*, 608 F. Supp. at 1194. In *Bridge C.A.T. Scan*, the counterclaim plaintiff, Technicare, alleged that, in the course of earlier litigation, Bridge, assisted by a former Technicare employee, Murphy, filed a complaint containing libelous statements that various equipment manufactured by Technicare was unreliable and posed a health risk to consumers.  Bridge's attorney then sent copies of the pleading to the press, allegedly for the purpose of publicly maligning Technicare's products.  *Id.*

at 1193-94. After finding that the act of sending copies of the complaint to the press was not protected by the absolute privilege for statements made during the course of judicial proceedings and fell into an exception to Civil Rights Law § 74's protection (since Technicare claimed that the prior suit was brought for the purpose of disseminating false statements about its products) the court noted that the fact that Bridge's counsel authored the defamatory statements did not shield Murphy from liability. *Id.* at 1194-95, 1197. The court found that, under agency principles, Bridge was liable for statements made by its counsel within the scope of Bridge's legal representation for the purpose of aiding Bridge, and that, as an alleged co-conspirator in a smear campaign against Technicare, Murphy could be held liable for libel for the acts and statements of its co-conspirator, Bridge, including statements made by Bridge's attorney. *Id.* at 1197. As in *Bridge C.A.T. Scan*, here the Pitsiladis may be held liable for defamatory statements published by their attorney, at their behest and for their benefit.

Moreover, even if Nezar is considered an independent contractor, rather than an agent, his actions give rise to liability on the part of the Pitsiladis. A principal is liable for the acts of an independent contractor where the principal "directed the act from which the injury resulted or [took] an affirmative, active part in its commission." *Cubby Inc. v. Compuserve Inc.*, 776 F. Supp. 135, 143 (S.D.N.Y. 1991). In this case, as set forth above, Guerrero alleged in his counterclaim that the Pitsiladis "instructed or authorized" Nezar to make the Statement about Guerrero to the press, with the intent of procuring its publication in the news media. This allegation clearly meets the standard for imposing vicarious liability upon the Pitsiladis for the acts of Nezar, even if he is considered an independent contractor.

 2. The Pitsiladis Are Liable for the Statement Because They Took Part in Its Procurement, Composition, and Publication

10

Aside from the application of general agency principles, the Pitsiladis are liable for the Statement because, "under New York law, all who take part in the procurement, composition, and publication of a libel are responsible in law and equally so." *Pisani*, 440 F. Supp. 2d at 179. Thus, in *Pisani*, allegations that defendants "prepared and approved for publication on [defendant hospital's web site]" an allegedly defamatory statement, and that each of the individual defendants "authorized, participated in and/or approved... the circumstance that the press release and related documents... were going to be published to the world on the Internet" were sufficient to state a claim against the various individual defendants being sued. *Id.* In the instant case, Guerrero alleged that the Pitsiladis "prepared" the defamatory statement by conceiving of it and then communicating it to Nezar, and "instructed or authorized" Nezar to, in turn, communicate the defamatory material to the press. Thus, this case is no different than *Pisani,* and the Pitsiladis may be held liable for the Statement they directed or encouraged their South African attorney, Nezar, to make to the press.

Further, the Pitsiladis are liable for the media's republication of the Statement in the Feb. 24th Article. "Anyone giving a statement to a representative of a newspaper authorizing or intending its publication is responsible for any damage caused by the publication." *Campo v. Paar*, 18 A.D.2d 364, 368 (1st Dep't 1963); *see also Rubenstein v. Manhattan & Bronx Surface Operating Auth.*, No. CV-96-902, 1997 WL 833456, at *6 (E.D.N.Y. Oct. 8, 1997) (stating that, "an original publisher will be liable for the republication of his libelous statement if he gave a statement to a representative of a newspaper authorizing or intending that it be republished"). As set forth above, the Pitsiladis told Nezar to tell members of the press that City Property was terminated because Guerrero misappropriated funds, with the intent that such statements would be republished in the media. (Answer ¶¶ 59-60.)

3.    The Attorney-Client Privilege Does Not Bar Proof of the Pitsiladis'
      Instructions to Nezar

The Pitsiladis further claim that they cannot be held liable for the Statement because any

communication made by them to Nezar, including any instruction to tell members of the press

that Guerrero misappropriated funds, would be covered by the attorney-client privilege, and

Guerrero will therefore necessarily be unable to prove his allegations. This misconstrues the

scope of the attorney-client privilege.[4]

Another independently sufficient reason for rejecting the Pitsiladis' avoidance defense is

that, at this stage in the proceeding, it is unclear whether Nezar was acting as counsel in relation

to the publication. While Nezar was identified in the Feb. 24th Article as the Pitsiladi family's

attorney, the scope of any representation he may have provided to the Pitsiladis or the Pitsiladi

Entities cannot be ascertained from this source. Certainly, he was not the attorney for the

Pitsiladis or the Pitsiladi Entities in the State Court Action. (See the copy of the Jan. 18, 2007

---

[4] Guerrero takes no position at this time concerning whether the applicable law that would apply, absent application of federal law, would be the law of New York State, the forum state, or the law of South Africa. Guerrero does not believe the application of New York law would yield a different answer to this question than would application of federal law, insofar as, in New York, the privilege is narrowly construed and protects only communications between attorney and client relating to legal advice. *See, e.g., Calabro v. Stone*, 225 F.R.D. 96, 98 (E.D.N.Y. 2004) (applying New York law). The Pitsiladis have failed to brief South African law, and Guerrero declines to do so at this juncture.

Although state law governs the applicability of the attorney-client privilege in a diversity action, *id.* at 97, 98, the Pitsiladis, in their brief, have assumed the applicability of federal law, and Guerrero will address their attorney-client privilege question as if federal law governs the issue.

Where federal law applies, "[t]he attorney client privilege requires that the asserted holder of the privilege is or sought to become a client, and that the person to whom the communication was made is an attorney admitted to practice and that the communication was made while that person was acting as an attorney. The communication must also relate to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing primarily an opinion of law or legal services or assistance in a legal proceeding." *Hydraflow, Inc. v. Enidine Inc.*, 145 F.R.D. 626, 630 (W.D.N.Y. 1993). Moreover, "[t]he privilege may not be asserted if the communication is for the purpose of committing a crime or tortuous misconduct." *Id.*

Applying these standards, the attorney client privilege would not prevent Guerrero from proving that the Pitsiladis instructed Nezar to make the Statement to the press with the intent it be published. First, Guerrero has alleged that the communication was made for the purpose of committing a tort - specifically, to cause the publication of defamatory material about Guerrero in the South African news media. Second, an instruction to an attorney to provide news media with a statement is not made for the purpose "of securing primarily an opinion of law or legal services or assistance in a legal proceeding." See, e.g. *Matter of Fiore*, 204 A.D.2d 637, 637 (2nd Dept 1994) (noting that attorney-client privilege does not apply when the information sought refers to non-legal matters such as business transactions, rather than legal advice)

Order [Exhibit 2 to the Complaint, Exh.1 to Dweck Aff.], the last page of which indicates that the defendants in that action were represented by "The Dweck Law Firm LLP", also their attorneys in this action, and not by Nezar)  It is unclear whether Nezar had any role in the State Court Action, or whether the Pitsiladis, individually or as representatives of the Pitsiladi Entities, would have had any reason to consult him with respect to obtaining legal advice concerning the termination of City Property, the proceedings in the State Court Action, or any other legal matter involving the Pitsiladis' or Pitsiladi Entities' relationship with Guerrero and/or City Property. Certainly, if Nezar's role was simply to act as the Pitsiladis' publicist in South Africa, none of their communications with him would be privileged, let alone any statements instructing him to make defamatory statements about Guerrero to members of the press which would never be privileged, regardless of the scope of any attorney-client relationship with Nezar.

*Silver v. Kuehbeck*, No. 05 Civ. 35 (RPP), 2005 WL 2990642 (S.D.N.Y. Nov. 7, 2005), cited by the Pitsiladis, is inapposite. In *Silver,* the defamation claim against defendant Bernstein was based on an allegation that Bernstein made certain defamatory statements about the plaintiff, Silver, to Ira Garr, an attorney that Bernstein hired because he believed that Silver was "stalking and harassing" Bernstein and his wife. In the course of Garr's representation of Bernstein, Garr wrote a letter to Silver in which he addressed the alleged stalking and harassment of his clients. *Id.* at *1, *13. Silver did not identify anyone other than Garr to whom the defamatory statements were allegedly published by Bernstein, nor did he claim that Garr republished the statement, other than in a letter that was sent only to Silver. *Id.* at *13. Therefore, the *only* basis Silver set forth for his defamation claim was a communication made by a party to his attorney for the purpose of securing legal assistance with a perceived problem. The Court held that such a communication was privileged and could not be the basis for a defamation claim. *Id.* In

13

contrast, as discussed above, there is no evidence that Nezar was retained to assist the Pitsiladis

and the Pitsiladi Entities with any legal problems they faced involving City Property or Guerrero.

Furthermore, the basis of Guerrero's defamation claim is not that he was defamed by the

Pitsiladis' act of telling their South African attorney that Guerrero had been fired for

misappropriating funds. Rather, Guerrero claims he was defamed by the Statement, which

Guerrero alleges was made by Nezar to the South African press at the instruction and behest of

the Pitsiladis, and for which they are responsible.

C.    To the Extent that a "Gross Irresponsibility" or Malice Standard Applies,
Guerrero Adequately Pled Same

The Pitsiladis' allegations that Guerrero failed to adequately plead the existence of either

gross irresponsibility or malice must be read in the light of the applicable pleading standard.

Notably, "the mode of pleading defamation is governed by Rule 8, Fed. R. Civ. P. which requires

only that plaintiff's charges be set forth in a short and concise statement, detailed only to the

extent necessary to enable defendant to respond and to raise the defense of res judicata if

appropriate." *Altschuler v. Univ. of Pa. Law Sch.*, No. 95 Civ. 249 (LLS), 1997 WL 129394, at

*9 (S.D.N.Y. Mar. 21, 1997) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir. 1980)),

(citations and internal quotation marks omitted), *aff'd*, 201 F.3d 430 (2d Cir. 1999), *cert. denied*,

530 U.S. 1276 (2000). Moreover, "the standard for pleading malice is governed by [Fed. R. Civ.

P.] 9(b), which states in relevant part: 'Malice, intent, knowledge, and other condition of mind

may be averred generally.'" *Id.* at *13 (quoting Fed. R. Civ. P. 9(b)).

1.    To the Extent That Defamatory Statement Involved a Matter of Public
Concern, Guerrero Adequately Alleged That the Pitsiladis Acted with
Gross Irresponsibility

Assuming for the purposes of argument only that the Statement related to a private

individual on a matter of public concern, so that the standard set forth in *Chapadeau v. Utica*

14

*Observer-Dispatch, Inc.*, 38 N.Y.2d 196 (1975), applies to Guerrero's counterclaim, the allegations clearly are sufficient to meet this standard. In *Chapadeau,* cited by plaintiffs, the New York State Court of Appeals articulated a standard of "gross irresponsibility"; a private party defamed by an allegation in a media article about a subject of public concern may recover only where the publisher "acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Id.* at 199; *see also, generally, Treppel v. Bovail Corp.*, 233 F.R.D. 363, 375-76 (S.D.N.Y. 2006). This standard has been applied not only to media defendants, but to situations where other defendants provided information to the media or otherwise publicized information about matters of public concern. *See, e.g., Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 101-02 (2d Cir. 2000).

It is "grossly irresponsible" to make a defamatory statement "knowing that it is false or while highly aware that it is probably false." *Treppel*, 233 F.R.D. at 376 (quoting *Konikoff,* 234 F.3d at 104). Guerrero's assertion that the Pitsiladis authorized or instructed Nezar to tell members of the South African press that Guerrero was fired for misappropriation of funds, notwithstanding their actual knowledge that this was false clearly alleges "grossly irresponsible" conduct. *See id.*; *see also Pollnow v. Poughkeepsie Newspapers, Inc.*, 107 A.D.2d 10, 18 (2d Dep't 1985) (plaintiff was not required to use the phrase "grossly irresponsible" in pleading; allegation that defendant acted "negligently, maliciously, and with a reckless disregard for the truth of the matter she asserted in the letters [to the editor]" was sufficient).

> 2.     To the Extent That a Malice Standard Applies, Guerrero Adequately Pled Malice

Guerrero disputes that any "privilege" exists regarding the defamatory statement at issue that requires him to plead or prove malice. As set forth above, the Statement to the press, made

at the behest of the Pitsiladis and for their benefit, was not privileged. However, even assuming *arguendo* that a malice standard is applicable to Guerrero's counterclaim,[5] Guerrero adequately pled malice. "Malice," for the purposes of a defamation action, refers to either of common-law malice, which is acting for the purpose of injuring another, rather than to protect any of one's own interests, or constitutional malice, which is acting without a bona fide belief in the truthfulness of the defamatory matter. *See Liberman v. Gelstein*, 80 N.Y.2d 429, 438 (1992); *see also Teicher v. Bellan*, 7 A.D.2d 247 (4th Dep't 1959). The standard for pleading malice is satisfied merely by pleading reckless disregard for the truth. *Church of Scientology Int'l v. Eli Lilly & Co.*, 778 F. Supp. 2d 661, 666 n.3 (S.D.N.Y. 1991). Thus, the standard for pleading malice is clearly satisfied in this case, insofar as Guerrero pled that the Pitsiladis had actual knowledge that the defamatory statement was false (Answer ¶ 61), and that Guerrero had not, in fact, been fired for misappropriating funds, when they instructed Nezar to respond to media inquiries by telling members of the press that City Property was terminated as a result of misappropriation of funds by Guerrero. Guerrero's claim they the Pitsiladis actually knew their statement was false when made adequately alleges constitutional malice. Moreover, the pleading gives rise to a reasonable inference that the Pitsiladis also acted with common law malice, for the purpose of injuring Guerrero by causing an injurious falsehood about him to appear in the popular media. No greater detail is required by Fed. R. Civ. P. 9(b), which does not require setting forth particularities for such allegations.

## CONCLUSION

For the reasons set forth herein, the motion to dismiss Guerrero's counterclaim should be denied.

---

[5] The Pitsiladis have not argued any reason for the application of a malice standard other than the existence of an alleged privilege; they have not, for instance, alleged that Guerrero is a limited purpose public figure nor have they set forth any other reason why a malice standard might apply to Guerrero's counterclaim.

Dated: Mineola, New York
      December 5, 2007

                                        Law Offices of Michael A. Haskel

                                 By:
                                        Michael A. Haskel
                                        167 Willis Avenue
                                        Mineola, NY 11501
                                        (516) 294-0250

Of Counsel,
Michael A. Haskel
Leonard Gekhman
Miranda Turner